The Honorable Richard J. Edlund State Representative, 33rd District State Capitol, Room 273-W Topeka, Kansas 66612
Dear Representative Edlund:
As state representative for the thirty-third district, you request our opinion regarding the provisions of K.S.A. 64-101, relative to a specific newspaper. You inform us that the paper in question is a weekly newspaper and has the following characteristics:
 "It has been published 52 times per year for over 5 years.
"It has a second class mail permit.
 "It has a general paid circulation in both Wyandotte and Johnson Counties.
 "More than 50% of its circulation in each Wyandotte and Johnson Counties is sold to subscribers on either a weekly or yearly basis.
 "It is a newspaper that offers general news to the public and is not a trade, religious or fraternal publication.
"It is printed in Kansas by the Olathe News in Johnson county."
Prior to the 1994 amendment of K.S.A. 64-101, cities of the first class and counties were required to use the same criteria in determining if a newspaper qualified for designation as the official newspaper. However, 1994 house bill no. 2534 amended K.S.A. 64-101 by carving out two different sets of criteria. Legislative history concerning the 1994 amendment to K.S.A. 64-101
evidences little discussion about official city newspapers. Rather, it appears that the primary concern was allowing newer papers to become the official county newspaper. The 1994 amendments to K.S.A. 64-101 did not alter the rules for designation as an official city newspaper.
K.S.A. 64-101(a), by its terms, applies to official city newspapers for cities of the first class. In order to qualify for such designation, a publication must fulfill the following:
 "(1) It must be published at least weekly 50 times a year and have been so published for at least five years
prior to the publication of any official city publication;
 (2) it must be entered at the post office of publication as second class mail matter;
 (3) it shall have general paid circulation on a daily, weekly, monthly or yearly basis in the county and shall not be a trade, religious or fraternal publication; and
 (4) it must be printed in the state of Kansas and published in the county publishing the official publication, or if there is no newspaper published in the county, then in a newspaper printed in Kansas and having general paid circulation in the county." (Emphasis added).
By comparison, K.S.A. 64-101(b) applies to qualification and designation as the official county newspaper. Subsections (b)(1) and (2) essentially contain the same terms as subsections (a)(1) and (2). One distinction made in 1994 was to the length of time a paper must have been previously published. K.S.A. 64-101(b)(1) requires only one year prior publication, however, the final sentence of subsection (b) goes on to provide: "Nothing in this subsection shall apply to counties in which no newspaper has been published the requisite length of time."
The first question you ask is whether a publication that has met all of the the other requirements of subsection (a), and which has an established paid circulation in Johnson county, has met the requirements of K.S.A. 64-101(a)(4). You do not indicate what municipality is considering using the newspaper as its official designee. Nor is it clear where the newspaper is currently published.
K.S.A. 64-101(a)(4) applies to the official city newspaper for a city of the first class. To qualify for such designation, the publication should comport with the other requirments set forth in K.S.A. 64-101(a)(1) through (3) and "must be printed in the state of Kansas and published in the county publishing the official publication or if there is no newspaper published in the county, then in a newspaper printed in Kansas and having general paid circulation in the county." (Emphasis added). A city of the first class does not get to the alternative set of qualifications if there is an otherwise qualifying newspaper published in the home county of the city in question. However, assuming that the city in question is located outside of the county in which the newspaper is published, and that there is no qualifying newspaper published in the city's home county, a city of the first class may utilize the second set of criteria listed in K.S.A. 64-101(a)(4) and designate as its official newspaper a publication that is printed in Kansas and circulated in the city's home county.
Your second question is whether the establishment of an advertising, circulation, layout and billing office in Johnson county meet the requirements of subsection (a)(4). The requirements of this subsection speak to printing in Kansas and publication in the home county, or in the alternative, printing in Kansas and circulation in the home county. You tell us that the paper in question is in fact printed in Kansas and circulated in both Wyandotte and Johnson counties. Thus, the requirements of printing and circulation are a given. Your second question therefore appears to concern the site of publication and whether the advertising, circulation layout and billing activities qualify as publication.
Many cases define "publish" to mean where the paper is first put into circulation, and not where it is printed. 66 C.J.S.Newspapers sec. 7 (1950). See also Attorney General Opinion No. 91-132; 24 ALR 4th "Newspapers of General Circulation" (1983).
 "The word `publish' means to declare publicly, to make generally known. It is not synonymous with the word `print.' Thus, something may be printed without being published, and it is published only when it is offered for sale or put in general circulation. . . . Although there is authority that the place of publication is the place where the paper or other periodical is printed, and not where it is circulated, the more accepted view is that the place of publication of a newspaper designated or selected for the publication of official notices is the place where the paper is first put into circulation, that is, where it is first issued to be delivered or sent, by mail or otherwise, to its subscribers, or where it is entered in the post office as second class matter. . . . It has also been said that a newspaper is considered published at the location where it has its principal offices and where its form and content is determined, or where it is `given to the world' that is, where all final editing, printing, correction of printed proofs, assembly, bundling, truck delivery, and mailing takes place. In other words, the place of publication is the newspaper's home office." 58 Am.Jur.2d Newspapers sec. 51 (1989). (Emphasis added).
We have not found any authority that recognizes more than one place of publication for a newspaper. Rather, the authority we have located uses "the place" of publication in the singular. While each newspaper may conceivably have many offices in and be circulated to several counties, we believe that it may have only one single place of publication. Thus, merely moving some of the advertising, circulation, billing, or layout functions to a different county will not change the county in which the paper is published.
Your third question has two parts "1. Are the requirements of sections (a) and (b) separate and distinct requirements? 2. Can a newspaper validly publish legal notices in a county if it meets the requirements of section (b) without reference to section (a)?"
As stated previously, subsections (a) and (b) are separate and distinct requirements. The qualification provisions of subsection (a) apply to official city newspapers for cities of the first class and the requirements of subsection (b) apply to official county newspapers.
Your fourth question recognizes that the language in K.S.A. 64-101
now contains some of the language found in K.S.A. 12-1651. This statute was discussed in Attorney General Opinion No. 91-132. You ask whether that opinion applies to the language now contained in K.S.A. 64-101(b). We believe it does, in so far as the language is identical and the discussion of K.S.A. 12-1651 speaks to the requirements now contained at K.S.A. 64-101(b).
In summary, the 1994 amendments to K.S.A. 64-101 establish separate and distinct requirements for qualification and designation of a newspaper as the official paper for a city of the first class or an official county newspaper. If there is no paper published in the county that qualifies under the first clause of K.S.A. 64-101(a)(4), a city of the first class may properly look to the alternatives in the second part of that subsection. Where a paper is published must be determined by looking at the facts surrounding its place of origin. Additional offices elsewhere will not necessarily alter the county of publication. The discussion on K.S.A. 12-1651 contained in Attorney General Opinion No. 91-132 may provide guidance concerning the requirements now set forth at K.S.A. 64-101(b).
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:bas